### FREEMAN *v.* MITCHELL.

1. INJUNCTION—PRELIMINARY INJUNCTION—MOTION TO DISMISS—
   JUDICATURE ACT.
   A contingent application for dissolution of a preliminary
   injunction may be combined with a motion to dismiss the
   bill as insufficient on questions raised by demurrer prior
   to the passage of the judicature act (Act No. 314, Pub.
   Acts 1915, 3 Comp. Laws 1915, § 12004 *et seq.*).

2. SAME—DISCRETION OF COURT—ABUSE OF DISCRETION.
   To grant or dissolve an interlocutory injunction is a dis-
   cretionary order of the trial court with which the courts
   will rarely interfere, and then only on special application
   and a strong showing of palpable abuse of discretion.

3. APPEAL AND ERROR—PRELIMINARY INJUNCTION—MOTION TO DIS-
MISS.

An order dissolving a preliminary injunction is not a final,
appealable order.

4. CORPORATIONS—RIGHTS OF STOCKHOLDERS—FRAUD—ACTIONS—
EQUITY.

Where the directors of a corporation are charged with
fraud in carrying out a scheme to wreck the corporation
by giving a mortgage for an unwarranted amount, timed
and intended to be promptly foreclosed, as is done, it is
unnecessary that a stockholder apply to such directors to
commence a suit for redress before individually seeking
relief in equity.

5. SAME.

A bill of complaint by a stockholder against directors of a
corporation charging fraud and conspiracy in giving a
mortgage for an unwarranted amount, timed and intended
to be promptly foreclosed, and the purchase by such
directors indirectly of all the assets of the corporation
at the foreclosure sale, *held*, sufficient to warrant a court
of chancery taking cognizance under its general equity
jurisdiction.

6. APPEAL AND ERROR—MOTION TO DISMISS—JUDICATURE ACT—
DEMURRER.

A motion to dismiss a bill as insufficient, under the judi-
cature act (Act No. 314, Pub. Acts 1915, chap 14, § 4, 3
Comp. Laws 1915, § 12456), raises only such questions as
previous to the enactment of such law could be raised by
demurrer.

7. SAME.

On demurrer to a bill the allegations of facts properly
pleaded are treated as true.

8. SAME.

In a suit in equity defendant's affidavits in denial and ex-
planation have no place in a demurrer.

Cross-appeals from Hillsdale; Collingwood, J., pre-
siding. Submitted June 18, 1917. (Docket No. 67.)
Decided September 27, 1917.

Bill by Amariah F. Freeman against C. T. Mitchell
and others, executors of the estate of William W.

Mitchell, deceased, the Alamo Manufacturing Company and others to enjoin the foreclosure of a mortgage against defendant corporation. From an order dissolving a temporary injunction and denying a motion to dismiss, both parties appeal. Affirmed.

*A. F. Freeman* and *F. M. Freeman*, for plaintiff.

*F. A. Lyon*, for defendants.

STEERE, J. This proceeding presents for review an order of the circuit court of Hillsdale county in chancery disposing of a motion by defendants asking dismissal of a bill of complaint filed against them by plaintiff, and for dissolution of a preliminary injunction granted when plaintiff filed his bill.

Aside from the request for dissolution of the injunction, the motion is in effect a demurrer to plaintiff's bill under former practice; motions to dismiss being now substituted for demurrers under section 4, chap. 14, of the judicature act (Act No. 314, Pub. Acts 1915 [3 Comp. Laws 1915, § 12456]). With the motion to dismiss, which is purely a demurrer, is combined a motion for dissolution of the injunction, affidavits being filed in support of the latter feature, as we assume, for it would scarcely be contended that a question of the sufficiency of plaintiff's bill as heretofore raised by demurrer will be tested by affidavits to the merits of the controversy.

Upon hearing said motion the trial court dissolved the injunction and denied the motion to dismiss plaintiff's bill. Defendants appealed from denial of their motion to dismiss the bill, and plaintiff from that portion of the order dissolving his injunction.

We see no objection to combining a contingent application for dissolution of a preliminary injunction with a motion to dismiss the bill as insufficient on

198—Mich.—14.

questions heretofore raised by demurrer. If the motion to dismiss the bill is well founded and prevails, the injunction falls with the bill; if not, the right remaining to urge an application for its dissolution after demurrer and before answer may be promptly disposed of at the one hearing, the applications being correlated and to a degree seeking the same relief.

To grant or dissolve an interlocutory injunction is a discretionary order of the trial court with which the appellate courts rarely interfere, and then only on special application and a strong showing of palpable abuse of discretion. It is fairly indicated in this proceeding that plaintiff will not be deprived of the benefits sought by his suit should he prevail, and, conceding the question properly here for review, we discover no abuse of discretion; neither does this order dissolving a preliminary injunction appear to deprive the plaintiff of any strict, legal rights, so as to be in its nature a final, appealable order. This rule has been applied to orders denying motions to grant, modify, and dissolve preliminary injunctions. *Wing* v. *Warner*, 2 Doug. 288; *Spencer* v. *Stearns*, 28 Mich. 463; *Simmons* v. *Board of Sup'rs of Alcona Co.*, 144 Mich. 591 (108 N. W. 282). The order of the trial court dissolving the injunction will therefore not be disturbed.

Against the court's refusal to grant defendants' motion to dismiss the bill as fatally defective upon the questions raised, as formerly by demurrer, defendants filed various assignments of error covering the court's failure to recognize as tenable the several grounds set out in their motion, which are condensed in counsel's brief to "questions involved" as follows:

"Did the bill of complaint set forth facts authorizing the plaintiff as a stockholder to bring and maintain this suit as a stockholders' suit?

"Did the bill of complaint set forth facts sufficient

to authorize the plaintiff to prosecute the suit and to put the defendants to the trouble and expense of trying said cause on the merits?"

The bill is filed by plaintiff as a stockholder in the Alamo Manufacturing Company, a corporation, of Hillsdale, Mich., with a capitalization of $600,000, of which $250,000 was preferred and $350,000 common stock. He alleges that it had been doing business "for a long term of years," and he has been a stockholder, owning 100 shares of its preferred and 300 shares of its common stock since March, 1908.

The substance of his grievance as detailed in his somewhat verbose bill is that in 1916, without his knowledge or consent, or that of the general stockholders, as he is informed and believes, defendants in unlawful combination and by a "species of fraud and conspiracy to cheat and defraud the general stockholders and this plaintiff and cut them and him off from further connection or relation to the properties of this defendant company," developed and carried out a scheme to wreck the corporation as such and absorb all its *corpus* of value, by having its president and secretary execute to the representatives of the estate of William W. Mitchell, deceased, a large mortgage on the entire assets of the company payable presently, and by promptly causing the same to be foreclosed in chancery by default and bidding in the property, obtained title and control of all assets of the corporation, taken in the name of the Mitchell estate, for and in the interest directly or indirectly of said defendants, or part of them, to the exclusion of the general stockholders and all others in interest not parties to the conspiracy.

It is strenuously urged that plaintiff has no standing in court as a stockholder because the bill fails to show that he first made application to the board of

directors asking or demanding of them that they bring
suit or take some action to remedy the alleged wrong
for and in behalf of the corporation, and that they
neglected or refused to take such action, citing nu-
merous authorities to the effect that such course is a
prerequisite to action by an individual stockholder,
and it is said:

"There is absolutely no attempt made to charge the
directors or any number of them with having gotten
control of the assets of the company and converted
them to their own use, nor with having wasted and
squandered the assets in any manner, shape, or form."

We cannot so construe plaintiff's complaint. The
burden of his bill is that the directors were intention-
ally false to the trust they had assumed as officers of
the corporation; that, being in complete control of its
business and assets, they clandestinely and fraudu-
lently conspired, planned, and acted against its in-
terests in the matter of this mortgage, given by their
direction for an unwarranted amount, timed and in-
tended to be promptly foreclosed, as it was, on default,
by one of their number acting in the foreclosure suit
as attorney of the mortgagees, recognized prior there-
to as the advisor and attorney of the corporation;
further charging, in connection with a cited annual
report made by the majority of the directors just
before authorizing the mortgage, that:

"There is no such amount as stated properly as
mortgage indebtedness nor as a proper decree or obli-
gation against defendant company, and that said mort-
gage is fraudulent, * * * conceived * * * to
cheat and defraud the stockholders of defendant com-
pany and gain titles away from defendant company
and its stockholders and to the person or persons whom
they might select or name as bidders at a foreclosure
sale," etc.

It is evident that, if such charges of fraudulent con-

duct are well founded (and for the purposes of a demurrer they are so assumed if well pleaded), it would be idle for plaintiff to apply for redress to the board of directors whose conduct he thus impugns. The following language in *Torrey* v. *Cement Co.*, 150 Mich. 86 (113 N. W. 580), is well in point here:

"This is not a case for the application of the rule that redress must be sought through the corporation before individual stockholders can seek redress in equity. The officers of the corporation are charged with fraud from the beginning, and it would be useless to ask them to cause suits to be commenced in which they are directly interested. The case is well within the principle of *Miner* v. *Ice Co.*, 93 Mich. 97 (53 N. W. 218, 17 L. R. A. 412) ; *Edwards* v. *Investment Co.*, 132 Mich. 1 (92 N. W. 491)."

There is some foundation for the charge against this bill that many of its allegations are generalities, conclusions, and assertions of belief with scant averment of definite facts to bear them out, but with them run others more tangible. It is also true that certain of the material allegations are upon information and belief, which could not well be otherwise under the circumstances alleged, but it does not follow that the bill is demurrable if it contains distinct charges and material allegations well pleaded. As foundation for the charge that the mortgage was given for an excessive amount and in bad faith plaintiff alleges, amongst other things, that it purports to be given to secure a series of notes in the principal sum of $250,-000, was executed by the president and secretary of the corporation acting under authority of its board of directors, was acknowledged before one of said directors as notary public, bears date January 10, 1916, and was recorded January 11, 1916, and within 50 days after it was given a bill of complaint was filed to foreclose it claiming past due and unpaid $269,-808.37, principal and interest, and:

"That it will appear by reference to the said last annual report filed and to be filed with the secretary of State as aforesaid as of December 31, 1915 (and sworn to February 29, 1916), and only ten days before said mortgage of $250,000 was given, that there was no mortgage indebtedness whatever against defendant company property, and that the liability on all other secured indebtedness was $190,926.28, and on all unsecured indebtedness was $21,643.39, or a total of $212,569.57, and that by that report it will also appear that the company had of assets $191,620.12 in goods, chattels, material, etc., and credits owing the company of $98,322.64 and of other assets which in all aggregated in value according to that sworn report to the munificent amount of $517,621.12."

It is further alleged as evidence of fraud in combining to give and foreclose the mortgage that the correctness of this report was attested by a majority of the board of directors who authorized the mortgage, including the attorney who foreclosed it for the mortgagees. Particular reference is also made to this and preceding reports as sustaining plaintiff's theories and averments of fraudulent conduct inimical to the interests of the corporation. The merits of these charges are contingent on the truth of the facts alleged and the inferences to be drawn from them.

We find scattered through this bill sufficient definite allegations of fact and charges of conspiracy and fraud to move a court of chancery to take cognizance under its general equity jurisdiction; they are not such as to be summarily met and dismissed on motion, nor can their merits be tried out on affidavits. This motion raises only such questions as could heretofore be raised by demurrer. On demurrer the allegations of fact properly pleaded are assumed as true. Defendant's affidavits in denial and explanation, wherein lies the chief strength of their argument, have no place in a demurrer, and cannot be considered in this proceeding.

The order of the trial court will stand affirmed, with costs of this motion, as on demurrer, in favor of plaintiff; defendants being granted the usual time to plead over issuably herein as they may be advised.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.